**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

MONE` ANGELIKAS,                  :
Plaintiff                         :
                                  :        CIVIL ACTION
v.                                :
                                  :        Case No. _____
CARR AND DUFF, LLC,               :
Defendant                         :
                                  :        JURY TRIAL DEMANDED

**COMPLAINT AND JURY DEMAND**

Plaintiff, by and through her attorneys, Earp Cohn P.C., hereby files this Complaint and

Jury Demand:

## I.    PRELIMINARY STATEMENT

1.    This is an action for an award of damages, punitive damages and such other relief

as deemed appropriate on behalf of Plaintiff, a former employee of Defendant Carr and Duff,

L.L.C. ("Defendant"). Plaintiff suffered harassment, discrimination and retaliation based on her

age and sex and her complaints regarding same.

2.    This action is filed pursuant to Title VII of the Civil Rights Act of 1964, as

amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000(e) et seq. ("Title VII") and the Age

Discrimination in Employment Act, 29 U.S.C. 621 ("ADEA").

## II.    PARTIES

3.    Plaintiff Mone` Angelikas is an individual residing in Philadelphia, Pennsylvania.

4.    Defendant Carr and Duff, LLC is Delaware limited liability company with its

corporate headquarters and principal place of business located at 2100 Byberry Road,

Huntington Valley, PA 19006.

5.     At all times relevant to this Complaint, Defendant was an employer within the meaning of Title VII and the AIMA.

6.     At all times relevant to this Complaint, Defendant employed more than fifteen (15) employees.

7.     At all times relevant to this Complaint, employees of Defendant acted as its agents and servants.

8.     At all times, relevant hereto, Defendant's employees were acting within the scope of their employment and under the direct control of Defendant.

## III.     JURISDICTION AND VENUE

### Subject Matter Jurisdiction

9.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 as this action arises under the laws of the United States, specifically Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq.

10.     This Court has jurisdiction over Plaintiff's Title VII claims pursuant to 42 U.S.C. § 2000e-5(f)(3) and 42 U.S.C. § 2000e-5.

11.     This Court has jurisdiction over Plaintiff's ADEA claims pursuant to 29 U.S.C. § 626(c) and 29 U.S.C. § 626.

**Personal Jurisdiction**

12.     This Court has personal jurisdiction over Defendant because Defendant maintains its principal corporate office in Pennsylvania, employed Plaintiff in Pennsylvania and the unlawful employment practices alleged herein occurred in Pennsylvania.

**Venue**

13.     Venue is proper in this Judicial District pursuant to 42 U.S.C. § 2000e-5(f)(3); 28 U.S.C. § 1391(b) because the unlawful employment practices alleged herein were committed in this District, because Plaintiff worked for Defendant in the District, because a substantial part of the events or omissions giving rise to the claim occurred in this District, because Defendant resides in this district, and because the employment records relevant to such practices are maintained and administered in this district.

**Administrative Prerequisites**

14.     Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about April 2, 2026.

15.     The EEOC investigated Plaintiff's Charge and issued a "Right to Sue" letter on April 24, 2026. A copy of the Right to Sue letter is attached hereto as Exhibit A.

16.     Plaintiff received the Right to Sue letter on May 4, 2026.

17.     This Complaint is filed within ninety (90) days of Plaintiff's receipt of the Right to Sue letter, as required by 42 U.S.C. § 2000e-5(f)(1).

18.     Plaintiff has fully complied with all prerequisites to jurisdiction in this Court under the ADEA and Title VII.

3

IV.    **FACTS COMMON TO ALL COUNTS**

**Background**

19.    Plaintiff was employed by Defendant as an Assistant Project Manager beginning on or about January 2006.

20.    Defendant is a large-scale commercial electrical contractor who engages in performing complex projects for utilities and transportation providers, as well as commercial industrial educational and medical facilities.

21.    Defendant commercial projects include large electrical building construction, low-voltage systems, specialty systems, testing and maintenance and lighting systems, as well as green renewable energy initiatives.

22.    Plaintiff is forty-nine (49) years old, and was born on November 24, 1976.

23.    Plaintiff's sex is Female.

24.    Throughout Plaintiff's employment with Defendant, Plaintiff performed her job duties in an exemplary manner.

25.    Plaintiff received positive performance evaluations and met or exceeded performance expectations.

26.    Plaintiff was an integral part of the Defendant company's success over twenty years.

27.    Plaintiffs work included drafting proposals for clients, physically visiting job sites for project management and reporting purposes, and drafting status reports.

28.    Plaintiff also engaged in significant customer interface. Plaintiff was often the "face of the company" to its customers.

4

29.	In December 2024, Rick Saunders, who served as Senior Project Manager at Defendant company, retired.

30.	In January 2025, Plaintiff began reporting to Shawn Duff and Pat Ryan.

**<u>Discriminatory Conduct</u>**

31.	Beginning in or around February 2026, Defendant subjected Plaintiff to disparate treatment based on her age and sex.

32.	Specifically, beginning in February 2026 Defendant manager Shawn Duff begun acting in aggressive and abusive manner toward Plaintiff.

33.	Shawn Duff began treating plaintiff in a derogatory and dismissive manner, treating her as a secretary / administrative assistant, as opposed to an Assistant Project Manager with twenty years of experience.

34.	Plaintiff was specifically instructed by Shawn Duff to stop performing her essential services for the company and to even stop taking notes during meetings.

35.	On or about March 2026 the defendant hired "Alex (surname unknown)", upon information and belief, a female aged in her twenties, to work as an administrative person, and to be trained as an assistant project manager.

36.	Between March 2026 and June 2026, the Defendant made it increasingly difficult for Plaintiff to perform her essential job functions.

37.	Plaintiff was scheduled to participate in important training on a new software system known as "Accubid" in March 2026.

38.	Plaintiff was told she would get a link in March for the weeklong training process.

39.	Proper training in this new software system would be essential for plaintiff to be effective in her job.

40. When plaintiff did not get the link for the schedule training session, she inquired of the Defendant's IT department.

41. The Defendant's IT department told Plaintiff that they were instructed to delete Plaintiff from the training program, and to instead insert "Alex" into the training session.

42. At no time did any manager or supervisor inform Plaintiff that she was no longer scheduled to attend this important training session.

43. Plaintiff then requested a meeting with Pat Ryan, who refused to meet and stated "I do not have to explain my decisions".

44. Plaintiff, then inquired of Shawn Duff, who stated "Pat's the boss".

45. On or about May 2026 the company published its summer schedule, as was its practice. Plaintiff was told that the Defendant would no longer provide schedule flexibility to Plaintiff.

46. For many years prior to 2026, Plaintiff and Defendant had agreed-upon a flexible schedule on certain days, which permitted Plaintiff time to transport and care for her children while still remaining highly effective at her job.

47. Plaintiff was successful for many years and performed in an exemplary manner for the Defendant, while working a flexible schedule.

48. Plaintiff was a salaried employee and always worked more than 40 hours, despite a somewhat flexible work schedule.

49. In June 2026 Plaintiff met with Pat Ryan along with David Sinclair and Carlena Hathaway (both Human Resources employees).

50. At the June 2026 meeting, the Plaintiff was told that the Defendant would no longer support any flexible scheduling for her.

6

51. Plaintiff raised questions about the missed training and about this treatment she was suddenly receiving from Shawn, including being micromanaged and being buried under dozens of daily emails.

52. Pat Ryan then responded that "Shawn brings in the revenue".

53. When Plaintiff responded that her work also "brings in the revenue", the Defendant disputed that her work brought in revenue.

54. When Plaintiff stated that " I guess this is a man's world", Pat Ryan became aggressive in his demeanor and responses to Plaintiff.

55. Plaintiff then requested that the Defendant put in writing that Shawn's behaviors were acceptable, and the Defendant refused.

56. Later in June a second online meeting was scheduled among Plaintiff, Pat Ryan and David Sinclair and Carlena Hathaway (both Human Resources employees).

57. At this meeting, Plaintiff was told that her position was being transferred to the Defendant's satellite "Galloway Office" located in South Philadelphia, a 45 minute to one-hour ride from the Defendant's headquarters where Plaintiff had worked her entire career with the Defendant.

58. This transfer was a retaliatory act and intended to force the resignation of Plaintiff.

59. Defendant was well aware the Plaintiff had childcare responsibilities that would not permit her to commute an hour each way with no schedule flexibility.

60. No legitimate business purpose was offered to Plaintiff to explain the purpose of this forced transfer.

61.     Plaintiff responded that she was being forced to resign, but that she would remain a professional and provide two weeks notice.

62.     Plaintiff then returned to her desk, where she was unsuccessful in her attempts to log back onto her computer.

63.     Plaintiff  then walked back toward the IT area, to inquire about the computer issues.

64.     Through an open doorway, Plaintiff heard Carlena Hathaway on the phone saying "Valarie I had to call you. She is asking too many questions about Shawn".

65.     Upon information and belief, Ms. Hathaway was calling Valarie Cofield, who is currently the Interim President of Defendant.

66.     The Defendant then instructed Plaintiff that she would be paid for two weeks, but that she was to be immediately be locked out of her computer, and to leave the building immediately.

67.     Plaintiff then informed Ms. Hathaway that she heard her conversation with Valerie, and suggested that perhaps Human Resources should close their doors when having such discussions.

**Adverse Employment Action**

68.     On or about June 20, 2025 Defendant constructively discharged Plaintiff by changing her schedule and work location in a manner that the Defendant knew would be impossible for Plaintiff to accommodate.

69.     No valid business reason was provided to plaintiff to explain these actions by Defendant.

70. Defendant's true motivation for the constructive termination was Plaintiff's age and sex.

71. Similarly situated employees who were younger than Plaintiff and/or of a different sex were treated more favorably than Plaintiff.

72. The discriminatory treatment and adverse employment action were part of a pattern and practice of age and sex discrimination by Defendant.

## COUNT I
## AGE DISCRIMINATION IN VIOLATION OF THE ADEA

73. Plaintiff realleges and incorporates by reference paragraphs 1 through 72.

74. At all relevant times, Plaintiff was at least forty (40) years old and a member of a protected class under the Age Discrimination in Employment Act, 29 U.S.C. § 623.

75. Plaintiff was qualified for her position and performed her job duties satisfactorily.

76. Despite Plaintiff's qualifications and satisfactory performance, Defendant subjected Plaintiff to adverse employment actions, including causing a constructive termination by revising her work schedule and job location in a manner that Defendant knew was impossible for Plaintiff to accommodate, revising her work.

77. Plaintiff's position was filled by a substantially younger individual approximately 20 years her junior with less than a year of experience working for Defendant.

78. The adverse employment action occurred under circumstances giving rise to an inference of age discrimination.

79. Defendant's stated reasons for the adverse employment action were pretextual, and the true reason was Plaintiff's age.

80. Defendant's conduct constitutes willful violations of the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq.

81.    As a direct and proximate result of Defendant's unlawful age discrimination,

Plaintiff has suffered and continues to suffer damages, including:

    A.  Lost wages and employee benefits;

    B.  Loss of future earnings and earning capacity;

    C.  Severe emotional distress, humiliation, and mental anguish;

    D.  Loss of professional reputation and career opportunities;

    E.  Other economic and non-economic damages.

## COUNT II
## SEX DISCRIMINATION IN VIOLATION OF TITLE VII

82.    Plaintiff realleges and incorporates by reference paragraphs 1 through 81.

83.    At all relevant times, Plaintiff was a member of a protected class based on sex

under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

84.    Plaintiff was qualified for her position and performed her job duties satisfactorily

for twenty (20) years.

85.    Despite Plaintiff's qualifications and satisfactory performance, Defendant

subjected Plaintiff to adverse employment actions, including causing a constructive termination

by revising her work schedule and job location in a manner that Defendant knew was impossible

for Plaintiff to accommodate.

86.    Plaintiff was treated less favorably than similarly situated employees of a

different sex.

87.    The adverse employment action occurred under circumstances giving rise to an

inference of sex discrimination.

88.    Defendant's stated reasons for the adverse employment action were pretextual,

and the true reason was Plaintiff's sex.

10

89.     Defendant's discriminatory conduct was intentional and undertaken with malice or reckless indifference to Plaintiff's federally protected rights.

90.     As a direct and proximate result of Defendant's unlawful sex discrimination, Plaintiff has suffered and continues to suffer damages, including:

   a.   Lost wages and employee benefits;

   b.   Loss of future earnings and earning capacity;

   c.   Severe emotional distress, humiliation, and mental anguish;

   d.   Loss of professional reputation and career opportunities; and

   e.   Other economic and non-economic damages.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and against Defendant, and award Plaintiff the following relief:

   A.   Back pay, front pay, and other compensation for lost wages and benefits from the date of the unlawful conduct to the present, and into the future, plus pre-judgment and post-judgment interest;

   B.   Compensatory damages for emotional distress, humiliation, mental anguish, loss of reputation, and other non-economic injuries in an amount to be determined at trial;

   C.   Punitive damages in an amount sufficient to punish Defendant and deter future discrimination, as authorized by 42 U.S.C. § 1981a;

   D.   In the event Defendant's violations of the ADEA are found to be willful, liquidated damages in an amount equal to the compensatory damages awarded, as provided by 29 U.S.C. § 626(b);

   E.   Front pay in lieu of a reinstatement demand;

11

F.  Injunctive relief prohibiting Defendant from engaging in discriminatory employment practices;

G.  Reasonable attorney's fees and costs of suit as provided by 42 U.S.C. § 2000e-5; 29 and 29 U.S.C. § 626; and

H.  Such other and further relief as this Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all claims so triable.

Dated: July 21, 2026                                Respectfully submitted,

                                                    _/s/Charles P. Montgomery_
                                                    Charles Montgomery, Esq.

                                                    Bar No: 309822
                                                    Earp Cohn PC
                                                    121 S. Broad Street, Suite 1720
                                                    Phila., PA 19107
                                                    Attorney for Plaintiff

12

**CERTIFICATION REGARDING RELATED ACTIONS**

The undersigned certifies that the matter in controversy is not the subject of any other action pending in any federal court, or of any pending arbitration or administrative proceeding.

Dated: July 21, 2026                    Respectfully submitted,

                                        */s/Charles P. Montgomery*
                                        Charles Montgomery, Esq.

                                        Bar No: 309822
                                        Earp Cohn PC
                                        121 S. Broad Street, Suite 1720
                                        Phila., PA 19107
                                        Attorney for Plaintiff

13

# EXHIBIT A

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Philadelphia District Office**
801 Market St, Suite 1000
Philadelphia, PA 19107
(267) 589-9700
Website: www.eeoc.gov

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 04/24/2026

**To:** Mrs. Mone Angelikas
918 Alburger Ave
Philadelphia, PA 19115

Charge No: 530-2026-05275
EEOC Representative and phone:   LEGAL
LEGAL UNIT
(267) 589-9707

---

### NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

The EEOC has granted your request that the agency issue a Notice of Right to Sue, where it is unlikely that EEOC will be able to complete its investigation within 180 days from the date the charge was filed.

The EEOC is terminating its processing of this charge. The EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court WITHIN 90 DAYS of your receipt of the EEOC's official notice of dismissal. Otherwise, your right to sue based on the above-numbered charge will be lost.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice that the EEOC has dismissed your charge and has issued you notice of your right to sue the respondent(s) on this charge. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of EEOC's official notice of dismissal.** You should keep a record of the date you received the EEOC's official notice of dismissal. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 530-2026-05275.

On behalf of the Commission,

Digitally Signed By: Karen McDonough
04/24/2026
Karen McDonough
Deputy Director

**Cc:**
Incident Location
Carr and Duff LLC
2100 Byberry Rd
Huntingdon Valley, PA 19006

David Sinclair
Carr & Duff
2100 BYBERRY ROAD
HUNTINGDON VALLEY, PA 19006

Donald A Nogowski Esq.
Earp Cohn PC
121 S Broad Street Suite 1720
Phila, PA 19107

Please retain this Notice for your records.

Enclosure with EEOC Notice of Closure and Rights (05/25)

# INFORMATION RELATED TO FILING SUIT
# UNDER THE LAWS ENFORCED BY THE EEOC
*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

## IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* EEOC's official notice of dismissal**. You should **keep a record of the date you received EEOC's official notice of dismissal**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving EEOC's official notice of dismissal (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA, or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of your receipt of EEOC's official notice of dismissal and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

## ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

## HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of EEOC's official notice of dismissal, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method). You may also submit a

Enclosure with EEOC Notice of Closure and Rights (05/25)

FOIA request for your charge file by U.S. Mail by submitting a signed, written request identifying your request as a "FOIA Request" for Charge Number 530-2026-05275 to the District Director at Karen McDonough, 801 Market St Suite 1000, Philadelphia, PA 19107.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 530-2026-05275 to the District Director at Karen McDonough, 801 Market St Suite 1000, Philadelphia, PA 19107.

You may request the charge file up to 90 days after receiving EEOC's official notice of dismissal. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.